IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| M.K., by and through his mother, BARLOWE K., | : : : | C.A. No. 16-309-SLR |
| Plaintiff, | : : | TRIAL BY JURY DEMANDED |
| v. | : : | |
| PRESTIGE ACADEMY CHARTER: SCHOOL, POSITIVE CHANGE ACADEMY,  PATHWAYS OF DELAWARE, PATHWAYS, MOLINA HEALTHCARE, INC., | : : : : : | |
| Defendants. | : : | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT
PRESTIGE ACADEMY CHARTER SCHOOL'S
MOTION TO DISMISS THE COMPLAINT**

Respectfully submitted,
WHITE AND WILLIAMS LLP

Marc S. Casarino (DE 3613)
Nicholas Wynn (DE 5670)
824 N. Market Street, Suite 902
Wilmington, DE 19801
Telephone: 302-467-4520
Fax: 302-467-4550
Email: casarinom@whiteandwilliams.com

Attorneys for Defendant *Prestige Academy Charter School*

Dated: October 17, 2016

-1-

17909285v.1

## TABLE OF CONTENTS

**PAGE**

NATURE AND STAGE OF PROCEEDINGS ............................................................................1
SUMMARY OF ARGUMENTS ...................................................................................................1
STATEMENT OF RELEVANT FACTS .....................................................................................2
ARGUMENTS ................................................................................................................................5
    I.    PLAINTIFF'S FAILURE TO TIMELY SERVE THE COMPLAINT UPON PRESTIGE IS INEXCUSABLE .......................................................................................5
        A.    Plaintiff's Failure to Timely Serve Prestige is Inexcusable ..........................6
        B.    Plaintiff Does Not Establish Grounds for Discretionary Extension of Service Deadline .......................................................................................7
    II.    PLAINTIFF'S COMPLAINT AGAINST PRESTIGE IS BARRED BY SETTLEMENT AND RELEASE .........................................................................................8
CONCLUSION .............................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ayres v. Jacobs & Crumplar, P.A.,*
   99 F.3d 565 (3d Cir. 1996)..................................................................................................6

*Brown v. Pena,*
   1997 U.S. Dist. LEXIS 6374 (D. Del. April 11, 1997).......................................................7

*Chiang v. United States SBA,*
   331 Fed. Appx. 113 (3d Cir. 2009)..................................................................................5, 6

*Future Fibre Techs. Pty. Ltd. v. Optellios, Inc.,*
   2011 U.S. Dist. LEXIS 90548, 2011 WL 3563341 (D. Del. Aug. 15, 2011)...................8, 9

*In re Columbia Gas System, Inc.,*
   50 F.3d 233 (3d Cir. 1995)..................................................................................................8

*Leor v. Gil,*
   2016 U.S. Dist. LEXIS 56377 (D. Del. Apr. 27, 2016).......................................................5

*MicroStrategy, Inc. v. Acacia Research Corp.,*
   No. 5735-VCP, 2010 Del. Ch. LEXIS 254 (Del. Ch. Dec. 30, 2010) .................................8

*O'Brien v. Progressive N. Ins. Co.,*
   785 A.2d 281 (Del. 2001) ...................................................................................................9

*Parker v. State of Delaware,*
   2000 U.S. Dist. LEXIS 3112 (D. Del. Mar. 13, 2000) .......................................................7

*Pension Benefit Guar. Corp. v. White Consol. Indus.,*
   998 F.2d 1192 (3d Cir. 1993)..............................................................................................2

*Petrucelli v. Bohringer and Ratzinger,*
   46 F.3d 1298 (3d Cir. 1995)............................................................................................6, 7

*United Rentals, Inc. v. RAM Holdings, Inc.,*
   937 A.2d 810 (Del. Ch. 2007).............................................................................................8

**STATUTES**

Title 14, Chapter 31 of the Delaware Code ................................................................................3

20 U.S.C. § 1400 et seq................................................................................................................3

42 U.S.C. § 1983...........................................................................................................................3

42 U.S.C. § 1985 ............................................................................................................................3

42 U.S.C. § 1988 ............................................................................................................................3

Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ................................1, 2, 3, 9, 10, 11

Family Education Rights and Privacy Act......................................................................................3

Individuals With Disabilities Education Act/the Individuals with Disabilities
 Education Improvement Act of 2004 .................................................................................3

No Child Left Behind Act...............................................................................................................3

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 .............................1, 2, 3, 9, 10, 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 4(i) .........................................................................................................................6

Fed. R. Civ. P. 4(m) ...........................................................................................................1, 4, 5, 6, 7

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff M.K. pursued an administrative due process complaint alleging special education claims against Defendant Prestige Academy Charter School ("Prestige"). The administrative due process complaint was resolved by a settlement agreement. The settlement agreement includes a release of claims by Plaintiff against Prestige. The release provision expressly discharges claims by Plaintiff against Prestige under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), and the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA").

Disregarding the plain language of the release provision of the settlement agreement, Plaintiff filed the instant Complaint seeking relief against Prestige under Section 504 and the ADA. Plaintiff did not serve the Complaint upon Prestige within the period allotted under Fed. R. Civ. P. 4(m) (*i.e.*, July 26, 2016). After being prompted by the Court for a status report, Plaintiff attempted late service of the Complaint by leaving a copy thereof at Prestige's office on September 26, 2016. Prestige filed the instant Motion to Dismiss because Plaintiff's claims are barred by the release provision of the settlement agreement and because service of the Complaint was inexcusably untimely.

## SUMMARY OF ARGUMENTS

I.    Plaintiff failed to serve the Complaint upon Prestige within the period allotted under Fed. R. Civ. P. 4(m). Plaintiff's neglect in inexcusable. As such, Plaintiff's Complaint against Prestige must be dismissed.

II.    Plaintiff settled and released all claims against Prestige under Section 504 and the ADA as part of the resolution of the administrative due process action. While Plaintiff reserved the right to pursue personal injury claims against Prestige, Plaintiff may not disregard the release

provision of the settlement agreement and pursue released claims for which he already received consideration. Accordingly, Plaintiff's claims against Prestige under Section 504 and the ADA are subject to dismissal for settlement and release.

## STATEMENT OF RELEVANT FACTS

Plaintiff was a seventh grade student at Prestige in 2014. Complaint, ¶ 12. Due to violent behavioral outbursts, Plaintiff was transferred to Defendant Positive Change Academy ("Positive Change") effective April 29, 2014. Complaint, ¶¶ 13, 14. While at Positive Change on April 30, 2014, Plaintiff allegedly suffered an injury to his arm when he was restrained from attacking a female staff member. Complaint, ¶ 18.

Plaintiff filed an administrative due process action against Prestige on November 24, 2015.[1] Through the due process action, Plaintiff claimed that Prestige failed to provide Plaintiff a free and appropriate public education because Prestige, among other things, referred Plaintiff to an alternative placement setting at Positive Change where Plaintiff suffered physical injury.[2] Plaintiff and Prestige reached a settlement agreement to resolve the due process action.[3] The settlement agreement includes a release provision as follows:

> 1. General Release of Claims. Except as set forth in paragraph 2 of this Agreement, **Mother, on her own behalf and on behalf of the Student**, by consenting to this Agreement and accepting from Prestige the consideration described in this

---

[1] Plaintiff's administrative due process complaint is appended at pages A001 through A007 of the Appendix in Support of the Opening Brief to the Motion to Dismiss the Complaint. Reference to this material does not convert consideration of the Motion to Dismiss to one for summary judgment because the material is integral to the Complaint and is an undisputedly authentic document. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).
[2] *Id.*
[3] The settlement agreement is appended at pages A008 through A014 of the Appendix in Support of the Opening Brief to the Motion to Dismiss the Complaint. Reference to this material does not convert consideration of the Motion to Dismiss to one for summary judgment because the material is integral to the Complaint and is an undisputedly authentic document. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Agreement, **hereby remise, release, acquit, waive and forever discharge any and all claims against Prestige** (including but not limited to the past or present members of Prestige's Board of Directors, in both their official and individual capacities; and Prestige's past or present administrators and employees, in both their official and individual capacities, their respective personal representatives, heirs and assigns; collectively, hereinafter, the "Released Parties") **of and from any and all manner of action and causes of action, claims, liabilities, judgments, damages, attorneys' fees, suits, debts, and demands whatsoever in law or equity, of whatever kind of nature, whether foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, direct or indirect, which Mother and Student had, has or can, shall or may hereafter have, regarding the education of Student from the beginning of the world through the date of the Parties' execution of this agreement that (a) arise under** the Individuals With Disabilities Education Act/the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA" and/or "IDEIA"), 20 U.S.C. § 1400 et seq.; **Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794**; 42 U.S.C. § 1983; 42 U.S.C. § 1985; 42 U.S.C. § 1988; **the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.**; the Family Education Rights and Privacy Act ("FERPA"); the No Child Left Behind Act (NCLBA"); and the Delaware state special education statutes (Title 14, Chapter 31 of the Delaware Code), and any regulations relating to the aforementioned laws adopted by any State or Federal administrative agency; **and (b) arise from allegations that Prestige did not comply with any provisions relating to the identification and evaluation of the Student, the development of any Individualized Education Program (IEP) or Section 504 service agreement for the Student, the provision of a Free Appropriate Public Education (FAPE) to the Student, or the implementation of any IEP or Section 504 service agreement for the Student, including but not limited to: (i) claims for compensatory education on account of the education of Student; (ii) claims for tuition reimbursement on account of the education of Student; (iii) claims for reimbursement of attorneys' fees on account of the education of Student and, (iv) any other claims regarding the education of the Student that could be raised by an administrative <u>or judicial complaint.</u>** However, nothing in this Agreement shall be interpreted as limiting the ability of any Party to litigate issues of non-compliance with this Agreement.

2. Limitation on Scope of Waiver. Notwithstanding the foregoing paragraph and the waiver language contained within that paragraph, this Agreement does not intend to, and **does not,**

-3-

> **release any claims that Student or Mother may have against Prestige** or its officers, directors, employees, agents, attorneys, officials, representatives, or insurers **under any theory or cause of action, including <u>any personal injury claim</u> or cause of action seeking monetary damages and incident relief, including attorneys' fees, arising from allegations that the Student suffered physical injuries and emotional and other damages resulting therefrom while attending Prestige** or Positive C.h.a.n.g.e. Academy, a.k.a. Positive Change Academy ("Positive Change"), **including allegations that Prestige acted wrongfully in placing Student at Positive Change**. It is further specifically understood and agreed that nothing in this Agreement is intended to waive any claims that Student or Mother may have against Positive Change or the officers, directors, employees, agents, attorneys, officials, representatives, or insurers of Positive Change.[4]

Plaintiff's Complaint in the instant matter was filed on April 27, 2016. The statute of limitations on Plaintiff's claims against Prestige expired effective April 30, 2016. Plaintiff's counsel sent the undersigned counsel a request to waive service of process dated June 5, 2016. The undersigned counsel was not authorized to waive service of process, nor to accept service of process on behalf of Prestige. Plaintiff's deadline to perfect service of process expired pursuant to Fed. R. Civ. P. 4(m) on July 26, 2016, without Plaintiff having served the Complaint upon Prestige.

On September 19, 2016, the Court ordered Plaintiff to provide a status report on or before October 20, 2016. Plaintiff's counsel telephoned the undersigned counsel on September 23, 2016 to request acceptance of service of the Complaint upon Prestige. The undersigned counsel reiterated the lack of authority to accept service of process on behalf of Prestige. Prestige received a copy of the Complaint on or about September 26, 2016, when it was left with a Prestige employee by someone purporting to be a process server.

---

[4] Settlement Agreement at ¶¶ 1-2 (emphasis added).

-4-

## ARGUMENTS

### I. PLAINTIFF'S FAILURE TO TIMELY SERVE THE COMPLAINT UPON PRESTIGE IS INEXCUSABLE

Federal Rule of Civil Procedure 4(m) sets forth a 90 day deadline to complete service of process after filing of a complaint. Fed. R. Civ. P. 4(m). If a complaint is not served within the time allotted under Fed. R. Civ. P. 4(m), it must be dismissed without prejudice unless the plaintiff can demonstrate good cause for the failure to timely serve a defendant. *Chiang v. United States SBA*, 331 Fed. Appx. 113, 115 (3d Cir. 2009). In this instance, good cause is equated with excusable neglect. *Id.* (citation omitted). The plaintiff bears the burden of proving an entitlement to an extension of the deadline to perfect service of the complaint. *Leor v. Gil*, 2016 U.S. Dist. LEXIS 56377, *9 (D. Del. Apr. 27, 2016) (citations omitted).

The court must conduct a two-part analysis to determine whether to extend the deadline to complete service of the complaint. *Chiang*, at 115. The first step is to determine whether there exists good cause for the failure to effect timely service. *Id.* The primary focus is upon the plaintiff's reason for not complying with the time limit in the first place. *Leor*, at *12 (citation omitted). Factors that the court may consider are: (1) the reasonableness of the plaintiff's efforts to serve; (2) prejudice to the defendant from untimely service; and (3) whether the plaintiff moved for an enlargement of time to serve. *Id.* If there is not good cause, then under the second step of the analysis the court must consider whether the circumstances warrant exercise of discretion to extend the service deadline. *Chiang*, at 115. As respects the second step, "the court may consider and balance several factors including: (1) actual notice of the action; (2) prejudice to the defendant; (3) statute of limitations; (4) conduct of the defendant; (5) whether the plaintiff is represented by counsel; and (6) any other relevant factor." *Id.* at 116.

Upon consideration of either step of the pertinent analysis, Plaintiff's Complaint must be dismissed for lack of timely service upon Prestige.

### A.  Plaintiff's Failure to Timely Serve Prestige is Inexcusable

Plaintiff bears the burden of proving why his dilatory efforts at serving the Complaint upon Prestige should be excused. Plaintiff cannot satisfy his burden of proof. Plaintiff waited over one month after filing his Complaint to mail a June 5, 2016 letter seeking waiver of service of process upon Prestige. Service was not waived by Prestige. Inexplicably, Plaintiff did nothing further to attempt to serve the Complaint upon Prestige until this Court prompted Plaintiff's counsel for a status report on September 19, 2016. By that time, Plaintiff's deadline to perfect service of the Complaint had expired months earlier. Disregard for the technical niceties of service of process do not constitute good cause, and nor will good cause be found based on inadvertence, half-hearted efforts by counsel, or reliance upon a third-party or process server. *See e.g.*, *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 568 (3d Cir. 1996); *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1307 (3d Cir. 1995).

Plaintiff plainly did not seek an enlargement of time to perfect service of process, so this factor weighs against extending the deadline to perfect service of the Complaint. Although Prestige had notice of the lawsuit, "the absence of prejudice alone can never constitute good cause to excuse late service." *Chiang*, at 116 (citation omitted). "Proper service is an essential step in establishing a district court's personal jurisdiction over the defendants." *Id.* at 115 (citing Fed. R. Civ. P. 4(i)). It is Plaintiff's responsibility to serve his Complaint within the time allowed by Fed. R. Civ. P. 4(m). Plaintiff cannot simply ignore his obligation to properly serve the Complaint upon Prestige on the belief that Prestige should have acquiesced with a waiver.

Plaintiff's efforts to timely perfect service of process upon Prestige were virtually non-existent. Plaintiff sent a perfunctory waiver letter (after sitting on his hands for a month) and did

-6-

nothing else to timely serve the Complaint. Such lack of diligence does not constitute good cause to extend Plaintiff's deadline to perfect service of the Complaint. *See e.g.*, *Parker v. State of Delaware*, 2000 U.S. Dist. LEXIS 3112, at *6-7 (D. Del. Mar. 13, 2000) (dismissing complaint that was not served for a couple of months after service deadline because of inexcusable, half-hearted efforts of counsel).

### B. Plaintiff Does Not Establish Grounds for Discretionary Extension of Service Deadline

The circumstances do not warrant the exercise of the Court's discretion to extend the service deadline. Plaintiff is represented by counsel, who is expected to understand and comply with the Federal Rules of Civil Procedure. Prestige did nothing to contribute to Plaintiffs failure to comply with his service obligations. Prestige did not attempt to evade service, provide inaccurate information, or otherwise obstruct Plaintiff's ability to timely perfect service of the Complaint. Rather, Plaintiff acted with complete neglect of his obligation to perfect service of the Complaint within the time allowed under Fed. R. Civ. P. 4(m). Plaintiff has no one to blame for his failure but himself.

As previously discussed, the absence of prejudice alone cannot be considered good cause to excuse late service. Nor does the running of the statute of limitations require the exercise of discretion to extend the time for service of process. *Brown v. Pena*, 1997 U.S. Dist. LEXIS 6374, at *12 (D. Del. April 11, 1997) (citing *Petrucelli*, 46 F.2d at 1306). Since there is no showing of good cause by Plaintiff, this Court should dismiss the Complaint even though the refiling of the action may be barred by the statute of limitations. *Id*.

Accordingly, Plaintiff is unable to demonstrate good cause to excuse the failure to timely serve the Complaint upon Prestige. Plaintiff similarly has failed to demonstrate grounds

warranting a discretionary extension of the deadline to perfect service of the Complaint upon Prestige. As such, Plaintiff's Complaint against Prestige must be dismissed.

## II. PLAINTIFF'S COMPLAINT AGAINST PRESTIGE IS BARRED BY SETTLEMENT AND RELEASE

Settlement agreements are construed according to traditional precepts of contract construction. *Future Fibre Techs. Pty. Ltd. v. Optellios, Inc.*, 2011 U.S. Dist. LEXIS 90548, at *9-11, 2011 WL 3563341 (D. Del. Aug. 15, 2011) (citing *In re Columbia Gas System, Inc.*, 50 F.3d 233, 238 (3d Cir. 1995). Here, the Settlement Agreement is governed by Delaware law.[5] Under Delaware law, the Court must determine the parties' shared intent, "looking first at the relevant document, read as a whole, in order to divine that intent." *Id.* (quoting *MicroStrategy, Inc. v. Acacia Research Corp.*, No. 5735-VCP, 2010 Del. Ch. LEXIS 254, at *5 (Del. Ch. Dec. 30, 2010) (internal quotation marks omitted). As part of that review, the Court interprets the words "using their common or ordinary meaning, unless the contract clearly shows that the parties' intent was otherwise." *Id.* (internal quotation marks omitted). The Court must attempt to reconcile all of the agreement's provisions when read as a whole, giving effect to every term. *Id.* The agreement must be interpreted in a manner that does not render any provision "illusory or meaningless." *Id.*

> If a settlement agreement's language is "clear and unambiguous," the ordinary meaning of the language generally will establish the parties' intent. *Id.* But a settlement agreement is ambiguous when the language "in controversy [is] reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Id.* (internal quotation marks omitted). Ambiguity does not exist simply because the parties do not agree on the proper construction of the document. *United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 830 (Del. Ch. 2007). Delaware courts have held that "extrinsic evidence is not to be used to interpret contract language where that language is plain and clear

---

[5] Settlement Agreement, ¶6.

> on its face." *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 289 (Del. 2001) (internal quotation marks omitted).

*Future Fibre*, 2011 U.S. Dist. LEXIS 90548, at *9-11. Applying these principles to the instant matter demonstrates that the Complaint must be dismissed against Prestige pursuant to the release provision in the Settlement Agreement.

In pertinent part, the Settlement Agreement provides:

\*\*\*

> General Release of Claims ... Mother, on her own behalf and on behalf of the Student, ... hereby remise, release, acquit, waive and forever discharge any and all claims against Prestige ... of and from any and all manner of action and causes of action, claims, liabilities, judgments, damages, attorneys' fees, suits, debts, and demands whatsoever in law or equity, of whatever kind of nature, whether foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, direct or indirect, which Mother and Student had, has or can, shall or may hereafter have, regarding the education of Student from the beginning of the world through the date of the Parties' execution of this agreement that (a) arise under ... Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ... the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ... and (b) arise from allegations that Prestige did not comply with any provisions relating to the identification and evaluation of the Student, the development of any Individualized Education Program (IEP) or Section 504 service agreement for the Student, the provision of a Free Appropriate Public Education (FAPE) to the Student, or the implementation of any IEP or Section 504 service agreement for the Student, including but not limited to: (i) claims for compensatory education on account of the education of Student; (ii) claims for tuition reimbursement on account of the education of Student; (iii) claims for reimbursement of attorneys' fees on account of the education of Student and, (iv) any other claims regarding the education of the Student that could be raised by an administrative or judicial complaint....

> Limitation on Scope of Waiver ... this Agreement does not intend to, and does not, release any claims that Student or Mother may have against Prestige ... under any theory or cause of action, including any personal injury claim or cause of action seeking monetary damages and incident relief, including attorneys' fees, arising from allegations that the Student suffered physical injuries and emotional and other damages resulting therefrom while

-9-

> attending Prestige ... including allegations that Prestige acted wrongfully in placing Student at Positive Change....

Prestige respectfully suggests that the Settlement Agreement is not ambiguous. It expressly releases any and all claims against Prestige under Section 504 and the ADA, whether such claims could be raised in an administrative *or judicial complaint*. From the language of the Complaint, Plaintiff apparently believes that because he does not think he could bring a Section 504 or ADA claim in the underlying administrative action he is free to do so in federal court. Plaintiff ignores that the release in the Settlement Agreement is broad, and includes not only claims that could be raised in the administrative process, but also claims that could be raised in a judicial complaint. In this instance, Plaintiff broadly released Prestige from any and all claims under Section 504 and the ADA, and the release is not limited to only claims that could be pursued in an administrative proceeding.

Plaintiff also incorrectly relies upon the "Limitation on Scope of Waiver" of the Settlement Agreement release provision to maintain the instant action against Prestige. The pertinent language plainly carves out only claims for physical and/or emotional injuries suffered by Plaintiff while attending Prestige. Neither Section 504 nor the ADA provides relief to Plaintiff for physical or emotional injuries. Rather, Section 504 and the ADA are designed to address discrimination and failure to provide access to free appropriate public education for a disabled student. All such claims were released against Prestige in the Settlement Agreement. At most, the Settlement Agreement affords Plaintiff an opportunity to pursue Prestige for personal injury claims associated with alleged physical and emotional injuries.[6]

---

[6] Prestige reserves all defenses to such claims, including that neither Prestige nor any of its staff had any involvement in the altercation at another school where Plaintiff was allegedly injured, as well as the fact that Prestige is statutorily immune from such tort claims.

To interpret the Settlement Agreement otherwise would read the explicit release of any and all claims under Section 504 and the ADA out of the release provision. Plaintiff has already been compensated, including his attorneys' fees, in exchange for the release of any and all claims against Prestige under Section 504 and the ADA. To allow Plaintiff to pursue those claims against Prestige again, and attempt to recover yet another set of attorneys' fees and damages for the released claims, would render the entire release provision meaningless. Such interpretation would run afoul of the contract interpretation principles established by Delaware courts. As such, to give proper meaning to all of the terms and conditions of the Settlement Agreement, it must be interpreted to preclude any and all claims against Prestige under Section 504 and the ADA, while permitting claims for physical or mental damages arising from any conduct while Plaintiff was a student at Prestige. The permitted claims would be state law tort claims. For these reasons, the release provision of the Settlement Agreement precludes Plaintiff's claims against Prestige in the Complaint.

## CONCLUSION

Plaintiff failed to serve the Complaint upon Prestige in a timely manner. Plaintiff's lack of diligence is inexcusable. There is no good cause to extend Plaintiff's deadline to perfect service, and accordingly the Complaint against Prestige must be dismissed.

Plaintiff's Complaint must also be dismissed because he has released any and all claims against Prestige under Section 504 and the ADA. It is obvious that Plaintiff twisted a state law claim for physical and mental injuries under the heading of Section 504 and the ADA in order to gain access to federal court and seek an award of attorneys' fees. Plaintiff's physical and mental injury claims are not cognizable under Section 504 or the ADA. In reality, Plaintiff's allegations in the Complaint are at best state law tort claims that should not have been pursued in federal court. Nor can Plaintiff recover attorneys' fees for such claims. Such litigation tactics should

not be countenanced, and immediate dismissal of the Complaint against Prestige is warranted. Prestige relies on the discretion of the Court whether to award Prestige its attorneys' fees and costs for having to pursue this motion.

                                      Respectfully submitted,
                                      WHITE AND WILLIAMS LLP

BY: /s/ Marc S. Casarino
      Marc S. Casarino (DE 3613)
      Nicholas Wynn (DE 5670)
      824 N. Market Street, Suite 902
      Wilmington, DE 19801
      Telephone: 302-467-4520
      Fax: 302-467-4550
      Email: casarinom@whiteandwilliams.com

      Attorneys for Defendant *Prestige Academy Charter School*

Dated: October 17, 2016