IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| M.K., by and through his mother, BARLOWE K., <br><br> Plaintiff, <br><br> v. <br><br> PRESTIGE ACADEMY CHARTER SCHOOL, POSITIVE CHANGE ACADEMY, PATHWAYS OF DELAWARE, PATHWAYS, and MOLINA HEALTHCARE, INC. <br><br> Defendants. | Civ. No. 16-309-SLR |

Caitlin E. McAndrews, Esquire of McAndrews Law Offices, P.C., Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Michael E. Gehring, Esquire of McAndrews Law Offices, P.C., Berwyn, Pennsylvania.

Marc S. Casarino, Esquire and Nicholas Wynn, Esquire of White and Williams LLP, Wilmington, Delaware. Counsel for Defendant Prestige Academy Charter School.

Steven T. Margolin, Esquire and Brittany M. Giusini, Esquire of Greenberg Traurig LLP, Wilmington, Delaware. Counsel for Defendants Positive Change Academy, Pathways of Delaware, Pathways, and Molina Healthcare, Inc.

**MEMORANDUM OPINION**

Dated: June 26, 2017
Wilmington, Delaware

ROBINSON, Senior District Judge

## I. INTRODUCTION

Plaintiff M.K. (the "plaintiff"), by and through his mother, Barlowe K. ("mother"), brought this action against defendants Positive Change Academy, Pathways of Delaware, Pathways, Molina Healthcare, Inc. (collectively, the "Positive Change defendants"), and Prestige Academy Charter School ("Prestige," and with the Positive Change defendants, "defendants"). (D.I. 1) The complaint alleges claims pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), and the common law of the State of Delaware. The court has subject matter jurisdiction over the federal law claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367. Pending before the court are two motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6): one filed by Prestige and the second filed by the Positive Change defendants. (D.I. 4; D.I. 19)

## II. BACKGROUND

Plaintiff attended Prestige for his fifth through seventh grade years. (D.I. 1 ¶ 1) In seventh grade, Prestige placed plaintiff into Positive Change Academy ("Positive Change"). (*Id.*) The complaint alleges that Positive Change is owned and operated by Pathways of Delaware, a subsidiary of Pathways, which in turn is a subsidiary of Molina Healthcare, Inc. ("Molina").[1] (*Id.* at ¶¶ 6-8) On or about April 30, 2014, plaintiff's first

---

[1] According to defendants, Positive Change and Pathways have no corporate existence. (D.I. 20 at 1 n. 1)

and only day at Positive Change, his arm was injured while staff restrained him.[2] (*Id.*)
In June 2014, Prestige evaluated plaintiff and found him to be an eligible disabled
student under the Individuals with Disabilities Education Act ("IDEA"). (D.I. 1 ¶ 21)

On November 24, 2015, plaintiff, represented by counsel, filed an administrative
complaint against Prestige for failure to provide a free and appropriate public education
("FAPE") pursuant to the IDEA and corresponding Delaware law. (D.I. 5 at 2; D.I. 15 at
A001-06) In that complaint, plaintiff also "reserve[d] the right to seek monetary
damages under Section 504 and the [ADA]."[3] (D.I. 15 at A001) Prestige and plaintiff
negotiated and executed a settlement agreement whereby plaintiff received monetary
compensation for legitimate education expenses and attorney fees, but nothing for
physical injuries. (*Id.* at A010-11) In exchange, plaintiff agreed to release all claims
against Prestige "regarding the education of [plaintiff]" that "arise under," among other
specific statutes and regulations, the IDEA, Section 504, and the ADA. (*Id.* at A008-09)
The agreement also provided that "notwithstanding" the above, plaintiff did not release
"any claims ... against Prestige ... under any theory or cause of action, including any
personal injury claim or cause of action seeking monetary damages ... arising from
allegations that [plaintiff] suffered physical injuries and emotional and other damages
resulting therefrom while attending Prestige or [Positive Change]...." (*Id.* at A009-10)
The settlement agreement is governed by Delaware law. (*Id.* at A012)

---

[2] Defendants claim the restraint was in response to plaintiff's inappropriate behavior. (D.I. 20 at 3)

[3] Prestige asserts that the court can take judicial notice of the administrative due process complaint and the settlement agreement, because they are integral to the complaint. (D.I. 5 at 2 n. 1 & 3) Plaintiff has not disputed that assertion.

2

In February 2016, plaintiff, still represented by counsel, reached out to Molina regarding his claims against the Positive Change defendants. (D.I. 23 at 6) Plaintiff provided an overview of his potential claims and requested documents, which Molina never sent. (*Id.*) There were no other substantive discussions between the parties. (*Id.*) On April 27, 2016, a few days before the statute of limitations expired, plaintiff, represented by the same counsel, filed his complaint in the instant matter. The complaint has three counts. Count 1, against all defendants, alleges that plaintiff was denied equal benefits of his educational program in violation of Section 504 when Prestige placed him in Positive Change without an appropriate evaluation of his disabilities and Positive Change improperly restrained him. (D.I. 1 ¶¶ 36-40) Count 2, against all defendants, alleges that the same actions were a violation of the ADA. (*Id.* at ¶¶ 43-46) Count 3, against only the Positive Change defendants, alleges that they are liable for tortious conduct "in connection with the April 2014 restraint and its aftermath." (*Id.* at ¶¶ 47-32 [sic]) On June 5, 2016, plaintiff sent Prestige a request to waive service of process. (D.I. 5 at 4) Prestige did not respond to the request. (D.I. 14 at 3) Plaintiff never sent the Positive Change defendants a request to waive service. (D.I. 23 at 7) When plaintiff's deadline to perfect service of process expired on July 26, 2016, plaintiff had not served the complaint on Prestige or the Positive Change defendants. (*Id.*)

On September 19, 2016, the court ordered plaintiff to provide a status report. (D.I. 3) A few days later, plaintiff again asked Prestige to waive service of process and Prestige responded that it would not. (D.I. 5 at 4; D.I. 14 at 7) Plaintiff served Prestige and Positive Change on September 26, 2016, Pathways of Delaware on September 27, 2016, and Molina on September 30, 2016, all two months after the deadline expired.

3

(*Id.*; D.I. 20 at 4) In an attempt to explain why the complaint was not served before the deadline expired, plaintiff states:

> It is Plaintiffs' [sic] counsel experience that, in the vast majority of federal cases, defendants or their attorneys agree to waive service in an attempt to eliminate the expense of hiring a process server. In cases where the attorney does not agree to accept service, it is Plaintiffs' counsel's experience that the attorney will notify Plaintiffs' counsel of this fact. In the present case, [Prestige's counsel] did not respond to the [initial] waiver of service forms.

(D.I. 14 at 7). Plaintiff does not provide an adequate explanation as to why request of waiver forms were never sent to the Positive Change defendants. Plaintiff simply claims it was "inadvertent[]" and "[d]ue to an internal oversight." (D.I. 23 at 7)

### III. STANDARD OF REVIEW

#### A. Rule 12(b)(5)

"Rule 12(b)(5) requires the Court to dismiss any case in which service of process was insufficient." *Hardwire, LLC v. Zero Int'l, Inc.*, 2014 WL 5144610, at *14 (D. Del. Oct. 14, 2014). A plaintiff to a civil action in federal court must serve the summons and complaint within 90 days of filing. Fed. R. Civ. P. 4(c)(1); Fed. R. Civ. P. 4(m). The court uses a two-prong inquiry to determine whether to excuse a plaintiff's failure to complete service within the time allowed and grant an extension. First, if plaintiff demonstrates "good cause" for the failure, the court must grant an extension. Fed. R. Civ. P. 4(m); *Chiang v. U.S. Small Bus. Admin.*, 331 Fed. App'x 113, 115 (3d Cir. 2009). Second, if plaintiff does not show good cause, the court may either dismiss the complaint or grant an extension in the sound exercise of its discretion. *Chiang*, 331 Fed. App'x at 115.

### B. Rule 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court's review is limited to the allegations in the complaint, exhibits attached to the complaint, documents incorporated by reference, items subject to judicial notice, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *D.M. ex rel. Ray v. Phila. Housing Auth.*, 613 Fed. App'x 187, 189 (3d Cir. 2015); *El-Hewie v. Bergen Cty.*, 348 Fed. App'x 790, 794 (3d Cir. 2009) (explaining that the "public record" includes administrative decisions). The allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## IV. DISCUSSION

Both Prestige and the Positive Change defendants argue that the complaint should be dismissed pursuant to Rule 12(b)(5) for failure to timely perfect service. (D.I. 5 at 5-8; D.I. 20 at 4-5) In the alternative, Prestige argues that the claims asserted against it should be dismissed, because they are barred by the settlement agreement. (D.I. 5 at 8-11) Each of these arguments are discussed in turn.

### A. Service of Process

It is unclear if plaintiff is arguing that he can demonstrate good cause. He never mentions the words "good cause" in either of his answering briefs. (D.I. 14; D.I. 23) Moreover, he never argues that the court must grant an extension, only that the court "should ... exercise its discretion to extend the time of service." (D.I. 14 at 7; D.I. 23 at

7) Nevertheless, out of an abundance of caution, the court will address both prongs of the two-prong inquiry.

### 1. Good cause

The court finds that plaintiff cannot demonstrate good cause for failing to serve defendants within the 90 days allowed by Rule 4(m). Courts generally consider three factors in determining whether good cause exists: (1) whether the plaintiff made a reasonable attempt to effect service; (2) whether the defendant is prejudiced by the absence of timely service; and (3) whether plaintiff moved for an extension of time for effecting service. *Farrace v. U.S. Dept. of Justice*, 220 F.R.D. 419, 420–21 (D. Del. 2004). The "primary focus" of the good cause inquiry "is on the plaintiff's reasons for not complying with the time limit in the first place." *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995).

Plaintiff made no attempt to serve the Positive Change defendants before the deadline expired; no attempt to request that they waive service of process; and provided an inadequate explanation why – inadvertent oversight. "[L]ack of oversight by counsel" and "inadvertence of counsel does not constitute good cause." *Braxton v. United States*, 817 F.2d 238, 242 (3d Cir. 1987); *see also In re Lenox Healthcare, Inc.*, 319 B.R. 819, 822 (Bankr. D. Del. 2005) (no good cause "when the failure is due to counsel's inadvertence or half-hearted efforts"). With respect to Prestige, plaintiff made one attempt to request waiver of service and never followed up after hearing no response. Rule 4 provides a mechanism that encourages defendants to waive service of process, but ultimately "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed." Fed. R. Civ. P. 4(c) and 4(d)(2). In addition,

plaintiff did not ask for an extension of time until after responding to the motion to dismiss. Several courts have found that these circumstances do not constitute good cause. *Phillips v. Household Fin. Corp.*, 2007 WL 1830897, at *3 (D. Del. June 25, 2007) (no good cause where plaintiff sent a waiver request and "made no further attempts to effect service despite the fact that defendant did not return the waiver within 30 days" of plaintiff's request); *Ritter v. Cooper*, 2003 WL 23112306, at *3 (D. Del. Dec. 30, 2003) (no good cause where plaintiff sent a waiver request and "made no further efforts to ensure that [defendant] in fact received the waiver and/or was properly served within 120 days").

### 2. Discretion

Even if good cause is not shown, an extension of time for service may be granted in the court's discretion. In exercising its discretion, the court may consider "actual notice of the legal action; prejudice to the defendant; the statute of limitations on the underlying causes of action; the conduct of the defendant; and whether the plaintiff is represented by counsel." *Chiang*, 331 Fed. App'x at 116. This list is not exhaustive. *Id.*

Although close, the court finds that these factors favor granting an extension of time to serve Prestige. Plaintiff is represented by counsel, who is expected to understand and comply with the Federal Rules of Civil Procedure. Prestige did nothing to contribute to plaintiff's failure to comply with his service obligations. Prestige did not attempt to evade service, provide inaccurate information, or otherwise obstruct plaintiff's ability to timely perfect service. Nevertheless, Prestige had actual notice of the legal action. Before filing the complaint, the parties negotiated and agreed to a settlement that specifically addressed claims based on Section 504, the ADA, and monetary

7

damages for plaintiff's physical injuries. After the complaint was filed and before the deadline for service expired, plaintiff sent Prestige a copy of the complaint along with a request for waiver of service. Prestige does not deny having received notice of the action. Moreover, the statute of limitations has run. Courts have exercised discretion in favor of an extension where defendants had actual notice and the statute of limitations had run. *See, e.g., Ritter*, 2003 WL 23112306, at *3-4 (granting an extension where the statute of limitations had run and defendant had actual notice of the complaint due to settlement negotiations and an unanswered request for waiver of service); *but see Chiang*, 331 Fed. App'x at 116 (affirming denial of extension where defendant had actual notice, the statute of limitations had run, plaintiff took four years to perfect service, and plaintiff, who was represented by counsel, did not ask for extension until facing a motion to dismiss).

The circumstances are not the same for the Positive Change defendants, who had no actual notice of the legal action. Unlike Prestige, plaintiff never sent the Positive Change defendants a copy of the complaint or a request for waiver of service. In addition, the parties never engaged in settlement discussions. Instead, plaintiff had one conversation with Molina where he provided an overview of potential claims several months before the complaint was filed. Plaintiff has not shown that such a conversation, without ever receiving a copy of the complaint, constitutes actual notice for the purpose of Rule 4(m). Thus, the only factor weighing in plaintiff's favor with respect to the Positive Change defendants is that the statute of limitations has run. The court notes, however, that plaintiff filed his complaint three days before the statute of limitations expired. The Advisory Committee note to Rule 4(m) cautions that "the device

8

of requested waiver of service is not suitable if a limitations period which is about to expire is not tolled by filing the action." Fed. R. Civ. P. 4(m). In other words, plaintiff should have attempted to perfect service in a manner consistent with the awareness that there was little margin for error, because the statute of limitations would shortly expire. The court "has discretion to dismiss the case even if the refiling of the action is barred." *MCI Telecomm.*, 71 F.3d at 1098. In these circumstances, where plaintiff made no effort to give the Positive Change defendants notice of the action until after the court requested a status report and did not act in a manner consistent with preserving his rights before the statute of limitations expired, the court is not inclined to exercise its discretion in favor of granting an extension. Accordingly, the motion to dismiss by the Positive Change defendants is granted. (D.I. 19)

B.  **Settlement and Release**

The court grants the motion to dismiss by Prestige based on the release in the Settlement Agreement. (D.I. 4) Under Delaware law, "[c]lear and unambiguous language ... should be given its ordinary and usual meaning." *iBio, Inc. v. Fraunhofer USA, Inc.*, 2016 WL 4059257, at *5 (Del. Ch. July 29, 2016) (*quoting Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006)). Here, plaintiff agreed to release all claims against Prestige that "arise under" the IDEA, Section 504, and the ADA. (D.I. 5 at 2-3) Counts 1 and 2, which are the only counts asserted against Prestige, seek to enforce rights and/or obtain remedies provided by Section 504 and the ADA, respectively. Counts 1 and 2 explicitly state they are "based upon" Section 504 and the ADA. (D.I. 1 ¶¶ 22-23, 40-41) Moreover, plaintiff asserts subject matter jurisdiction in this court "pursuant to 28 U.S.C. § 1331 because this case raises federal

9

questions under Section 504 and the ADA." (*Id.* at ¶ 10) Accordingly, counts 1 and 2 arise under Section 504 and the ADA and are, therefore, barred by the settlement agreement. *Cf. Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 539 F.3d 199, 206-207 (3d Cir. 2008) (claims that defendants "violated the ADA" and took actions that "triggered ADA ... obligations" "arise under ... the ADA").

Plaintiff argues that his claims against Prestige survive, because paragraph 2 of the settlement agreement states that "notwithstanding" the release in paragraph 1, plaintiff may bring claims "**under any theory or cause of action** ... arising from allegations that [he] suffered physical injuries and emotional and other damages while attending" Positive Change. (D.I. 14 at 11-12 (emphasis in original)) Under a general rule of contract construction, "specific words limit the 'meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate.'" *In re IAC/InterActive Corp.*, 948 A.2d 471, 496 (Del. Ch. 2008) (quoting 11 Williston On Contracts § 32:10 (4th ed. 1999)). Moreover, "an interpretation that gives effect to every part of the agreement is favored over one that makes some part of it mere surplusage." *Ross Holding & Mgmt. Co. v. Advance Realty Group, LLC*, 2010 WL 1838608, at *6 (Del. Ch. Apr. 28, 2010). Applying those principles of contract interpretation here, it appears from the agreement that the parties' purpose was to settle those claims and potential claims plaintiff asserted in his administrative complaint. Thus, the more general term "any theory or cause of action" is limited by the specific causes of action enumerated in paragraph 1, which include the Section 504 and ADA claims. Paragraph 2 should be interpreted as providing plaintiff with the right to bring claims under any theory or cause of action other

10

than those statutes, which presumably would be a tort claim under state common law similar to what plaintiff alleged against Positive Change in count 3. To interpret the release as plaintiff suggests, would render the release mere surplusage.

## V. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss (D.I. 4; D.I. 19) are granted, and the complaint is dismissed without prejudice. An appropriate order shall issue.